IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RACHEL ROUSSEAU, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:23-cv-04641 ) ) Judge Joan H. Lefkow |
| AADINATHNAM CORP., d/b/a DUNKIN DONUTS, | ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Rachel Rousseau brings this action against Aadinathnam Corporation, which does business as Dunkin' Donuts ("Aadinathnam"), alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), under theories of discrimination, failure to accommodate, harassment, and retaliation. Aadinathnam moves for summary judgment on all counts. (Dkt. 17.) For the reasons stated below, the motion is granted.[1]

**BACKGROUND**

In March 2022, Rachel Rousseau was hired as a crew member at a Dunkin' Donuts retail location in Elmhurst, Illinois.[2] Aadinathnam, through its owner Anita Shah, purchased the store in August 2022 and kept Rousseau on as an employee. Rousseau informed Aadinathnam that she suffered from depression, anxiety, and high blood pressure. She further explained that she was on

---

[1] Jurisdiction is proper under 42 U.S.C. § 12101. Venue is proper under 28 U.S.C. § 1391(b)(1), (2).

[2] The court relies on the factual assertions and objections contained in the parties' Local Rule 56.1 submissions. See N.D. Ill. L.R. 56.1. When the movant submits a properly supported statement of material facts, those facts "are admitted unless the non-movant specifically controverts them in its factual statement, shows them to be unsupported, or demonstrates that reasonable inferences can be drawn in its favor." *Hinterberger* v. *City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020) (internal quotation omitted). The court relies on the relevant and properly supported factual assertions based on the undisputed facts, the parties' admissions, and, if a fact was properly disputed, the court's review of the underlying evidence.

medication for her disabilities and experienced side effects, including her need to frequently use the bathroom.

In her first two months of employment under Aadinathnam, Rousseau began to demonstrate attendance issues. In late August, Rousseau arrived more than ten minutes late to her shift on two separate occasions and once called in sick. In September, Rousseau twice left work at least an hour before her shift ended because she was not feeling well. Later that month, Rousseau did not work her assigned shift due to a sore throat and fever.

Rousseau requested shift changes as an accommodation for her health needs. On September 11, 2022, Rousseau sought a $2 per hour raise. Aadinathnam consented to the raise but requested that Rousseau work certain afternoon or night shifts in exchange.[3] Rousseau agreed to the arrangement. Aadinathnam would not have approved the raise had Rousseau opted to keep her accommodation.

On October 2, 2022, despite the recent agreement, Rousseau texted Shah asking to be assigned only morning shifts. Shah responded with the following text message:

> Many times you have asked to leave early and few times you have made sick calls on very last minute. We are trying very hard to build sales and customers. For that we definitely need a reliable, responsible and efficient employees. When shift runs short handed, sales hurts and profit gets compromised! I want to build a good reputation of this store. I want people to have consistent, friendly; fast service. One day we have full staff and another day, we are short handed because someone didn't show up! In this case, customers get bad impression and they decide to go somewhere else… Now you tell me how can I rely on you and work with you? You have to give me an assurance that you will show up at work five minutes early. (Dkt. 24 ¶ 12.)

---

[3] Certain of defendant's exhibits, such as text message exchanges, are not authenticated or accompanied by affidavits or declarations attesting to their admissibility. Nevertheless, "federal courts routinely consider unauthenticated documents on motions for summary judgment ... when it is apparent [ ] that such documents are capable of reduction to admissible, authenticated form." *Boyce* v. *Wexford Health Sources, Inc.*, No. 15 C 7580, 2017 WL 1436963, at *3 (N.D. Ill. Apr. 24, 2017) (citation omitted). As the veracity of the exhibits are not disputed, the court will consider them here.

Rousseau's attendance issues persisted. On January 12, 2023, Rousseau did not appear for her scheduled morning shift because her cat was sick. On February 5, Rousseau left work before her shift ended because she was "exhausted" from her anxiety medication. (*Id.* ¶ 17.) Within the next two weeks, Rousseau twice left work before her shift ended. She once texted Shah saying she had vomited and was weak and tired. On another occasion, Rousseau called off work because she had been "very sick lately on and off." (*Id.* ¶ 19.) On March 12, Rousseau failed to appear for her shift; she later texted Shah that she "look[ed] at the wrong schedule and thought [she] was off." (*Id.* ¶ 21.) Later that month, Rousseau texted Shah saying she had an upset stomach and would not be working her scheduled shift.

Rousseau also experienced conflict with her coworkers. On September 19, 2022, Rousseau explained that her request to leave early was due to conflict with a coworker, Jasmine. In October 2022, Rousseau texted Shah that she had to leave before her shift ended because another coworker, Nashali, "was trying to start a fight" with her. (*Id.* ¶ 13.) On another occasion, an employee overheard Christian Vipparthi, the afternoon shift leader, refer to Rousseau as a "mental case" who was "on drugs." (*Id.* ¶ 14; dkt. 29 ¶ 11.) In February 2023, Rousseau left work before her shift ended because of a confrontation with Niharika Barot, the store manager. Rousseau told Shah that Barot was "rude and antagonistic." (Dkt. 24 ¶ 20.)

During Rousseau's employment, Aadinathnam encountered functional issues with the employee and customer bathrooms: the pipes in the bathrooms frequently clogged, causing the toilets to overflow when flushed. By March 2023, the bathrooms were out of service. On March 13, 2023, Aadinathnam paid $1,444 to Intelligent Service: Plumbing, Heating, Cooling & Drain Cleaning ("Intelligent") to "hydro jet" the bathroom toilets. (*Id.* ¶ 26.)

3

At some point, though not clear from the record, Rousseau lodged a complaint about the bathrooms with the DuPage County Health Department (the "Department"). On March 23, 2023, Shah received an email from the Department, stating that it received a complaint about "the bathrooms being blocked off for no customer use." (*Id.* ¶ 30.) The next day, Aadinathnam paid Intelligent an additional $692.00 to clear the main drain from an outside access point. After learning the restrooms needed additional repair, Aadinathnam applied for permits to remove the concrete in the bathrooms and replace pipes, at a cost of approximately $20,000. Aadinathnam replied to the Department describing the steps it had taken to remedy the bathrooms, to which a representative replied, "You guys are doing a good job, I understand the situation." (*Id.* ¶ 31.)

While the bathrooms were inoperable, Shah texted Rousseau regarding her hours:

"Hi Rachel, I was going to send you a message and clarify but I got caught up with other work. I can definitely understand where the confusion comes from, let me explain what led to the schedule for you this week.

We have asked every employee to minimize their bathroom visits-max 2 per shift- since an increase in the number of visits leads to the toilets getting clogged, and we simply cannot spend $2,000 every week to get them fixed.

However, since your medicine requires you to drink more water which leads you needing to use the bathroom more often, I wasn't sure how to ask you to minimize the bathroom visits. Instead, what I had to do was to limit your schedule just until the piping is fixed or until you don't need to take as many bathroom visits. I can make something work and give you more hours during the week, but you would have to go to the bathroom at either Guac n Taco or Burger King. I know you don't have your own car, so that's why I didn't propose this earlier. You're a great worker, and this has nothing to do with that-it just has to do with the fact that we cannot make the bathroom regularly accessible while keeping in mind that you need to frequent it multiple times per shift because of your medicine. I don't want anything to happen like last time where either you don't feel good or need to change because the bathrooms weren't accessible.

Let me know how you think this could best work out." (Dkt. 24-1.)

Rousseau responded that she would try not to "drink as much water" and "won't use the bathroom more than any of the other employees do." (Dkt. 24-3 at 2–3.) Rousseau requested

4

that, so long as she remained "compliant and agree[d] with [Aadinathnam's] terms," she be assigned 30 hours of work per week. (*Id.*) Shah replied: "I will send your schedule soon." (*Id.*) Rousseau received a schedule reduced by approximately 15 to 20 hours.

On April 4, 2023, Rousseau arrived at the store an hour late for her shift. That day, Shah, with the approval of Aadinathnam Director of Operations Parth Patel, decided to terminate Rousseau's employment. Shah sent Rousseau a text explaining the decision, which provided in part:

> "We can't risk scheduling people when their attendance is bad and they don't show up or come late! It really hurts sales. Today also you came an hour late. Morning gets very busy and showing up late is not acceptable. I am sorry but its not working out. We cant let sales hurt and take losses. Being late today also caused us problems. Unfortunately I have to take you off from the schedule. I wish you the best." (Dkt. 24 ¶ 24.)

During the eight months of Rousseau's employment with Aadinathnam, she failed to work her full shift fourteen times.

Following her termination, Rousseau filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on her disability as well as retaliation for the incident with Vipparthi and her complaints about the bathrooms being out of service in March 2023. (Dkt. 1-2.) She received a right-to-sue letter on June 2, 2023. (Dkt. 1-3.) On July 18, 2023, she filed this lawsuit. (Dkt. 1.)

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya* v. *Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party seeking summary

judgment bears the burden of establishing that there is no genuine dispute of any material fact. *Gray* v. *City of Evanston*, No. 23-CV-1931, 2024 WL 3495009, at *3 (N.D. Ill. July 22, 2024) (citing *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986)). The court construes all facts and reasonable inferences in favor of the nonmoving party. *Daugherty* v. *Page*, 906 F.3d 606, 609 (7th Cir. 2018).

"It is well-settled that speculation may not be used to manufacture a genuine issue of fact." *Weaver* v. *Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (quotation omitted). If the nonmoving party cannot "establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment must be granted." *Lesiv* v. *Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (cleaned up).

## ANALYSIS

Rousseau brings claims of discrimination (Count I), failure to accommodate (Count II), harassment (Count III), and retaliation (Count IV) under the ADA. Aadinathnam moves for summary judgment on all counts.

### I. Rousseau's Status as a "Qualified Individual"

Aadinathnam contends that Rousseau was not a "qualified individual" under the ADA and therefore is not entitled to relief. (Dkt. 17 at 8–9.)[4] "A plaintiff may only recover under the ADA if she is a qualified individual, in other words, someone who, with or without reasonable accommodation, can perform the essential functions of the job." *Arroyo* v. *Volvo Grp. N. Am.*, LLC, 93 F.4th 1066, 1069 (7th Cir. 2024) (quotation omitted); 42 U.S.C. § 12111(8). The determination as to whether Rousseau is a qualified individual must be made "as of the time of

---

[4] Aadinathnam's brief suggests that it only asserts the "qualified individual" argument with respect to Rousseau's failure to accommodate claim. (Dkt. 17 at 8.) The section concludes, however, that summary judgment should be granted in Aadinathnam's favor "on all counts." (*Id.* at 9.) The court therefore construes Aadinathnam's argument as to all claims for which it is applicable.

6

the employment decision." *Nowak* v. *St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998). "[P]laintiff bears the burden of proof on the issue of whether he is a 'qualified individual' under the ADA." *E.E.O.C.* v. *Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001) (quotation omitted).

Aadinathnam asserts that regular attendance constituted an essential function of Rousseau's position as a crew member at Dunkin' Donuts, as "one cannot serve customers coffee and donuts remotely." (Dkt. 17 at 9.) "The essential-function inquiry is a factual question, *not* a question of law." *Brown* v. *Smith*, 827 F.3d 609, 613 (7th Cir. 2016) (emphasis in original). The court's "presumption is that the employer's judgment as to what is essential is correct unless the plaintiff offers sufficient evidence to the contrary." *Bilinsky* v. *Am. Airlines, Inc.*, No. 16 C 4253, 2018 WL 4181481, at *5–7 (N.D. Ill. Aug. 31, 2018) (collecting cases), *aff'd*, 928 F.3d 565 (7th Cir. 2019), *as amended* (Aug. 9, 2019).

Rousseau does not dispute that regular attendance constituted an essential function of her job. "The question, therefore, is whether she can show that she could perform this essential function 'as of the time of the employment decision.'" *Moore-Fotso* v. *Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1025 (N.D. Ill. 2016) (quoting *Nowak*, 142 F.3d at 1003). Rousseau contends that there are genuine disputes of fact as to her attendance record at the time of (1) her termination, and (2) earlier periods of her employment, when Aadinathnam allegedly reduced her hours and removed her accommodations.

### A. "Qualified" at the Time of Termination

The parties do not dispute that, at the time of her termination, Rousseau had been absent from her shift fourteen times, either in part or entirely. Rousseau nevertheless emphasizes that "several" of her absences or requests to leave early were approved by Aadinathnam. (Dkt. 23 at

7

6.) This fails to address whether Rousseau demonstrated regular attendance by the time of her termination and does not account for the unexcused absences during her employment. *See Moore-Fotso*, 211 F. Supp. 3d at 1027–28 (concluding that the plaintiff was not a qualified individual despite receiving excused absences in part because she failed to show "that it was [the] [d]efendant's refusal to accommodate her that caused her *unexcused* absences") (emphasis in original).

Similarly unavailing is Rousseau's contention that she received only one write-up for her attendance, which was ultimately rescinded. The record contains multiple communications with Rousseau regarding her unsatisfactory attendance. Shah's unrebutted testimony further suggests that Aadinathnam cautioned Rousseau about her attendance on three occasions. (Dkt. 24-2 at 41:10–17) ("I think Rachel was given warning more than three times, and I still worked with her."). The absence of write-ups to the same effect does not rebut this fact. *See Anderson* v. *Street*, 104 F.4th 646, 653 (7th Cir. 2024) ("That no one wrote her up or confronted her with the online reviews does not demonstrate that [the employer's] reasons for firing her were pretexts."); *Arroyo*, 93 F.4th at 1069 ("[A]n employer may treat regular attendance as an essential job requirement and need not accommodate unreliable attendance.")[5]

Rousseau also has not identified any case law supporting the conclusion that she was a qualified individual at the time of her termination. Without such responsive authority or additional evidence, she has failed to carry her burden. Accordingly, Rousseau has not raised a triable dispute of fact as to whether she could fulfill the essential function of her position. *See*

---

[5] Rousseau argues that *Arroyo* is distinguishable because in that case, the plaintiff "pled and presented evidence of discrimination *directly* related to her absences," and "the accommodations she requested were, in part, directly related to her ability to miss work." (Dkt. 23 at 6.) Rousseau fails to explain the relevance of these facts. Although the record does not establish whether Aadinathnam had a strict attendance policy like that in *Arroyo*, Aadinathnam "required its employees to be in the building and ready to work at their scheduled time" and Rousseau "failed to perform that essential job function, however minimally." *Arroyo*, 93 F.4th at 1070.

*Jovanovic* v. *In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899–900 (7th Cir. 2000) (affirming district court's finding that plaintiff was not a qualified individual based in part on his twenty-four absences in twelve months); *see also Preddie* v. *Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015) (concluding that plaintiff's twenty-three absences in a school year prevented him from performing the essential functions of his teaching position). The court therefore finds that Rousseau was not a qualified individual under the ADA at the time of her termination.

### B. "Qualified" During Employment

Rousseau contends that there remains a triable dispute of fact as to whether she was a qualified individual at the time Aadinathnam took various employment actions against her. The first alleged action is that her hours were "unilaterally reduced due to her need to use a bathroom." (Dkt. 23 at 7.)

She points to Shah's text message describing the reduced hours schedule, which referred to Rousseau as "a great worker." (Dkt. 24-1 at 3.) Rousseau argues that this demonstrates that she was "effectively fulfilling her job duties" at that time. (Dkt. 23 at 7.) To the contrary, the quality of Rousseau's work is irrelevant to her attendance issues. *Arroyo*, 93 F.4th at 1069 ("[Plaintiff] argues that she is a qualified individual because her supervisors consistently gave her positive job performance reviews. But Volvo only terminated Arroyo because of her attendance issues; her otherwise satisfactory job performance is irrelevant."). In the absence of any evidence establishing that Rousseau could perform the essential function of her role at the time Shah reduced her hours, she has failed to carry her burden.[6]

---

[6] Rousseau does not assert that the reduction in her hours precluded her from fulfilling the essential functions of her role. She argues only that Shah's complimentary remark reflected her ability to perform those functions at the time of the alleged adverse action—her reduction in hours.

Rousseau also contends that she was a qualified individual when Aadinathnam allegedly required her to give up her ability to request shift changes—her accommodation—to receive a raise. She points to Shah's deposition testimony describing the raise, in which Shah "makes no mention of any issues with [her] attendance." (*Id.*) Shah's failure to discuss Rousseau's attendance, however, does not constitute affirmative evidence that her attendance was satisfactory. *Smithson* v. *Austin*, 86 F.4th 815, 821 (7th Cir. 2023) ("[B]ecause she has the burden of proof in demonstrating that she was a qualified individual, the absence of evidence on whether she could perform essential tasks from home … weighs against her claim.").

Finally, Rousseau argues that Aadinathnam failed to engage in an interactive process to determine what accommodations would be deemed reasonable and allow her to work. Regulations accompanying the ADA suggest that "'it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]' to determine an appropriate accommodation." *Bunn* v. *Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014) (quoting 29 C.F.R. § 1630.2(o)(3) (emphasis omitted)). This argument also fails, however, as "there is no separate cause of action for a failure of that interactive process." *Id.* More fundamentally, even if Aadinathnam failed to engage in the interactive process, she still must "present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation." *Basden* v. *Prof. Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). Rousseau has failed to do so here.

For the foregoing reasons, the court concludes that no reasonable jury could find that Rousseau was a qualified individual under the ADA during her employment with Aadinathnam. As such, Aadinathnam's motion for summary judgment on Counts I, II, and III[7] is granted.

---

[7] The parties briefed the merits of Count III, Rousseau's harassment claim, which is related to her alleged conflict with Christian Vipparthi. While the court need not reach the issue, the claim would still fail. Conduct giving

*Leibas* v. *Dart*, No. 19 CV 7592, 2022 WL 17752389, at *12 (N.D. Ill. Dec. 19, 2022), *aff'd*, 108 F.4th 1021 (7th Cir. 2024) ("Because showing that she is a qualified individual is a requirement of her ADA claims, Leibas has not met her burden, and her claims fail as a matter of law.").[8]

## II.     Retaliation (Count IV)

Rousseau also brings a retaliation claim under the ADA. "The Seventh Circuit has held 'that even those who are not qualified individuals can maintain a claim for retaliation.'" *Lauten* v. *Vill. of Lisle*, No. 18-CV-05943, 2022 WL 4465968, at *9 (N.D. Ill. Sept. 26, 2022) (quoting *Kotaska* v. *Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020)). To establish a prima facie retaliation claim, a plaintiff must present evidence that (1) she engaged in statutorily protected activity, (2) Aadinathnam took adverse action against her, and (3) the protected activity caused the adverse action. *Brooks* v. *City of Pekin*, 95 F.4th 533, 539 (7th Cir. 2024). If Rousseau can establish a prima facie case of retaliation, Aadinathnam "must then offer a legitimate, nondiscriminatory reason for its adverse action." *Id.* (quotation omitted). The burden then shifts back to Rousseau to show that Aadinathnam's reason was pretextual. *Id.* Rousseau identifies two allegedly retaliatory actions: her termination and a reduction in hours.

---

rise to a hostile work environment must be "sufficiently severe or pervasive to have altered the conditions of her employment such that it created an abusive working environment." *Passananti* v. *Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012). The single incident involving Vipparthi's comments that Rousseau was a "mental case" and "took drugs" was not "sufficiently severe or pervasive" as to alter the conditions of her employment. (Dkt. 29 ¶ 11); *see Ford* v. *Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 851 (7th Cir. 2019) ("A hostile work environment occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own") (quotation omitted). Indeed, Rousseau continued to work with Vipparthi after the incident.

[8] Rousseau cautions against the "public policy ramifications" of dismissing her claims, contending that such a conclusion "is tantamount to authorizing employers to discriminate at will against employees *throughout their employment* with no ramifications, provided they can terminate them later in their employment in conjunction with an alleged attendance policy." (Dkt. 23 at 8.) The court agrees that a detailed review of an employee's ability over the course of their employment is appropriate. *See, e.g.*, *E.E.O.C* v. *AutoZone Inc.*, No. 07-1154, 2012 WL 266922, at *1 (C.D. Ill. Jan. 27, 2012) ("The two trials covered two different time periods, and the fact that a jury found Mr. Shepherd to be a 'qualified individual' entitled to protection under the statute for one time period has little to do with whether the statutory elements were met for a different time period."). Here, however, Rousseau has failed to create a triable dispute of fact as to her regular attendance during any period of her employment. Because she cannot carry her burden, her ADA claims fail.

### A. Termination

Rousseau first argues that she was terminated in retaliation for complaining to the Department about bathroom accessibility. Aadinathnam responds that Rousseau fails to establish causation, as it was not aware that Rousseau lodged the complaint at the time of her termination.

"To establish a causal connection for a claim of retaliation, temporal proximity alone is insufficient." *Moore-Fotso*, 211 F. Supp. 3d at 1038 (citing *Mobley* v. *Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) (cleaned up)). The plaintiff must "go beyond '[s]peculation based on suspicious timing' and 'produce facts which somehow tie the adverse decision to the plaintiffs' protected actions.'" *Id.* (quoting *Sauzek* v. *Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)). "The ultimate burden of demonstrating that the defendant engaged in unlawful retaliation 'always remains with the plaintiff.'" *Adzogble* v. *Tyson Fresh Meats, Inc.*, 677 F. Supp. 3d 770, 788 (C.D. Ill. 2023) (quoting *Hudson* v. *Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)).

Rousseau relies primarily on her own testimony in support. She testified that on April 4, 2023, the Department left her a voicemail informing her that it would contact Aadinathnam regarding the bathrooms; Aadinathnam fired Rousseau later that day. Rousseau also suggests that another employee, Steffany, reported the bathroom problems to the Department and was fired. As an initial matter, Rousseau's testimony on these issues is improperly considered at summary judgment, as it constitutes inadmissible hearsay. *W. Am. Ins. Co.* v. *Trent Roofing & Const.*, 539 F. Supp. 2d 1052, 1055 (N.D. Ill. 2008) (declining to consider deposition testimony at summary judgment where "entire basis of knowledge" concerning alleged agreement was inadmissible hearsay).

Even if Rousseau's testimony were accepted, however, her claim still fails for lack of causation. "An employer 'must have had actual knowledge of the complaints for [its] decisions

12

to be retaliatory.'" *Moore-Fotso*, 211 F. Supp. 3d at 1039 (quoting *Luckie* v. *Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004)). Rousseau testified only that the Department planned to call Aadinathnam; she points to no evidence suggesting that the Department intended to identify her. *See Tomanovich* v. *City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) ("It is not sufficient that [an employer] could or even should have known about [an employee's] complaint; [the employer] must have had actual knowledge of the complaints for [its] decisions to be retaliatory.") (quotation omitted). Rousseau presents no evidence that Aadinathnam had actual knowledge of her complaint.

Rousseau's causal theory is further attenuated because it is undisputed that she arrived an hour late to work on the day she was terminated. Shah testified that the reason she terminated Rousseau on April 4 was because of Rousseau's poor attendance record, which is consistent with her communication to Rousseau; *see Moser* v. *Indiana Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005) (affirming summary judgment as to retaliation claim because "numerous incidents brought [plaintiff's] professionalism and ability … into question" and therefore the record did not "suggest a causal link" between protected activity and reassignment").

Rousseau fails to rebut such evidence, instead relying heavily on the temporal proximity of these events—namely, that she was terminated the same day the Department informed her it would contact Aadinathnam. Without more, however, such proximity remains insufficient. *See Blackwell* v. *Alliant Techsystems, Inc.*, 822 F.3d 431, 436–37 (8th Cir. 2016) (affirming summary judgment as to Title VII retaliation claim where plaintiff was fired the same day she sent an email to ethics investigator, as plaintiff had previously been investigated for conflicting with coworker and HR completed termination request form); *see also Alfonso* v. *Tri-Star Search LLC*, No. CV-07-1208-ST, 2009 WL 1227769, at *14 (D. Or. May 4, 2009) (granting summary

13

judgment as to ERISA retaliation claim even though plaintiff was terminated on the same day that she met with employment attorney, where there existed "no evidentiary basis from which to conclude that [her supervisors] somehow found out about the meeting").

Rousseau therefore fails to establish a prima facie case of retaliation, and Aadinathnam is entitled to summary judgment. *See Moore-Fotso*, 211 F. Supp. 3d at 1038–40 (granting summary judgment because the plaintiff "does not present any evidence that [employer] was aware of her [EEOC charge] when Plaintiff was not hired for permanent positions.").[9]

### B. Reduced Hours

Rousseau next suggests that Aadinathnam reduced her hours in retaliation for her internal complaints about the lack of a bathroom. She argues that she complained to Barot and Shah about her need to use a bathroom while Aadinathnam's bathrooms were inoperable, and her hours were reduced in retaliation. Rousseau specifically points to Shah's text message that the reduction in hours "just has to do with the fact that we cannot make the bathroom regularly accessible while keeping in mind that you need to frequent it multiple times per shift because of your medicine." (Dkt. 24-1 at 3.) Aadinathnam argues that it did not retaliate against Rousseau when it reduced her hours but rather tried to "accommodate her needs with the needs of the store." (Dkt. 28 at 5.) An informal complaint may constitute a protected activity for purposes of a retaliation claim. *Casna* v. *City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009).

Rousseau's claim fails, however, because she cannot establish that Aadinathnam took an adverse employment action against her. While a reduction in hours can constitute an adverse action, *Hill* v. *Potter*, 625 F.3d 998, 1001 (7th Cir. 2010), the record only suggests that

---

[9] Rousseau also fails to cite any legal authority in support of her theory, which further supports summary judgment. *See Miller* v. *Ameritech Corp.*, No. 02 C 2286, 2005 WL 2266614, at *9 (N.D. Ill. Sept. 14, 2005), *aff'd*, 214 F. App'x 605 (7th Cir. 2007) (granting summary judgment in part because plaintiff "failed to cite to any legal authority in support of his claim of retaliation under the ADA").

Aadinathnam sought to accommodate Rousseau's needs in an inconvenient situation. Shah made clear that the reduction in hours was to permit Rousseau to work, but not for so many hours that she would be uncomfortable without regular bathroom access. (Dkt. 24-1 at 3) ("I don't want anything to happen like last time where either you don't feel good or need to change because the bathrooms weren't accessible."). Indeed, Shah expressly offered Rousseau additional hours: "I can make something work and give you more hours during the week, but you would have to go to the bathroom at either Guac n Taco or Burger King. I know you don't have your own car, so that's why I didn't propose this earlier." (Dkt. 24-1 at 3.)[10] She also reiterated that the arrangement would only be temporary. (*Id.*) ("[W]hat I had to do was limit your schedule just until either the piping is fixed or until you don't need to take as many bathroom visits").

In the absence of additional evidence, no reasonable jury could conclude that Aadinathnam took an adverse action against Rousseau when it decided to reduce her hours. *See Hancock* v. *Potter*, 531 F.3d 474, 478–79 (7th Cir. 2008) ("Nearly all of the so-called adverse employment actions that [plaintiff] raises were merely attempts by the Postal Service to ensure that she provided it with work but did not work beyond her personal restrictions. … [Plaintiff] protests that her work hours were reduced, but this was simply due to the fact that there was a lack of available work that fell within her very limiting restrictions."). Because Rousseau has failed to carry her burden, the court grants summary judgment for Aadinathnam as to Count IV.

---

[10] Rousseau disputes that she was offered to use the bathroom at the Guac N' Taco restaurant across the street or could ask another employee to drive her to another restroom. (Dkt. 24 ¶ 29.) Rousseau contends "this was never said." (*Id.*) The factual basis for this dispute, however, does not relate to the text message. Rather, Rousseau disputes that Patel or Shah told her that "if you ever needed to use the restroom … to just ask a manager or a coworker." (Dkt. 18 at 56.) This is not inconsistent with Shah's text message, which expressly acknowledges the challenges related to transporting Rousseau to bathrooms at other locations.

**CONCLUSION AND ORDER**

For the foregoing reasons, Aadinathnam's motion for summary judgment (dkt. 17) is granted. The Clerk is directed to enter judgment in favor of Aadinathnam. Civil case terminated.

Date: March 31, 2025

_____
U.S. District Judge Joan H. Lefkow